**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CRYSTAL RAMBO, | ) CASE NO. 1:24-CV-00129-BYP |
| Plaintiff, | ) JUDGE BENITA Y. PEARSON |
| v. | ) MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) CARMEN E. HENDERSON |
| Defendant, | ) **REPORT & RECOMMENDATION** |

**I. Introduction**

Plaintiff, Crystal Rambo ("Rambo" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On February 5, 2021, Claimant filed an application for DIB, alleging a disability onset date of April 18, 2020. (ECF No. 7, PageID #: 37). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On January 27, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On February 9, 2023, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 37-52). The ALJ's decision became final on November 22, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 21).

1

On January 23, 2024, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 10, 11). Claimant raises a single issue in this appeal: "Whether the ALJ committed multiple reversible errors in evaluating the medical source opinions." (ECF No. 8 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> During the hearing, she testified that she lives in a home with her parents, and she drives short distances (Hearing Testimony). Additionally, she testified that she does not like being in public, she experiences anxiety, panic attacks, and racing thoughts, and she testified that she tends to self-isolate (Hearing Testimony). Additionally, she testified that she is forgetful, she experiences episodes of confusion, and she feels zoned out (Hearing Testimony).

(ECF No. 7, PageID #: 43).

#### B. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> Shortly before the alleged onset date, the undersigned presented for urgent care treatment on March 19, 2020, and her diagnoses included Migraine (B2F/1 - 3). Notably, the associated physical examination revealed normal findings (Id. at 1 - 2). After the alleged onset date, the record documents she sought emergency care on July 10, 2020, due to right shoulder pain, following a fall at a local department store (B4 F/3). Notably, an x-ray examination failed to reveal abnormal findings (Id. at 7). Further, the associated physical examination revealed normal findings, except the right shoulder was tender to palpation over the superior aspect (Id.). She was diagnosed with Acute Pain of the Right Shoulder (Id. at 9).
>
> Thereafter, on July 27, 2020, the claimant presented for follow-up of a recent injury to her right shoulder (B3 F/10). The associated physical examination revealed grossly normal findings, except decreased range of motion, tenderness, and crepitus were noted in the right shoulder, and abdominal tenderness was noted (Id. at 12). Her diagnoses included Chronic Right Shoulder Pain, which was treated conservatively with a large joint/bursa injection (Id. at 13 - 14). . . .
>
> On March 12, 2021, the claimant presented for primary care treatment, and her diagnoses of Hypertension and COPD, which were noted as being treated

conservatively without complications (B5F/4). Moreover, the record notes she endorsed bilateral shoulder pain that worsened with increased activity (Id. at 5). Further, she reported feeling down, low motivation, and increased worry and anxiety (Id.). Her diagnoses included Essential Hypertension, COPD, Chronic Pain of both shoulders, and Anxiety and depression (Id. at 8). . . .

In addition, during March 2021, the record documents the claimant sought psychiatric treatment for depression and anxiety; her diagnoses included Major Depressive Disorder and Generalized Anxiety Disorder (B6F & B11F). Moreover, on March 23, 2021, her mood was noted as depressed, and her affect was noted as labile, tearful, and mood appropriate in context; however, her insight and judgment were noted to be fair (B6F/6). . . .

In May 2021, the record documents the claimant presented for an Initial Comprehensive Assessment, and she was diagnosed with Major Depressive Disorder and Generalized Anxiety Disorder (GAD) (B11F/1 - 7). The record notes she sought help with dealing with her unruly son (Id. at 6). Further, she endorsed anxiety symptoms including excessive and difficult to control anxiety and worry, restlessness, easily fatigued, difficulty concentrating or mind going blank, irritability, muscle tension, and sleep disturbance (Id. at 6). Additionally, she endorsed depressive symptoms including diminished interest or pleasure, significant appetite or weight change, insomnia, irritability, fatigue and loss of energy, social isolation, crying spells, feelings of worthlessness, excessive guilt, feelings of hopelessness, and feelings of helplessness (Id.). During the associated Mental Status Examination, her mood was noted as euthymic and depressed, but her concentration was noted as good, and her insight, judgment, and impulse control were noted as good (Id.).

Moreover, on May 27, 2021, the claimant presented for a primary care visit for follow-up of conditions including chronic pain of both shoulders (B14F/101). She endorsed experiencing intermittent flares, resulting in difficulty when being active (Id. at 104). The associated physical examination revealed findings including tenderness in the bilateral shoulders and increased pain with active range of motion bilaterally; however, the neurological and psychiatric findings were normal (Id. at 106). Subsequently, on November 9, 2021, she presented for a psychiatric evaluation and endorsed experiencing depression and anxiety; additionally, she requested to be started on medication for depression (B13F/70). While her mood was noted as anxiety, and her concentration and memory were noted to be poor, her insight was noted as fair, and her judgment was noted as good (Id. at 73). . . .

Next, on August 26, 2021, the record documents the claimant was administered bilateral large joint injections, due to diagnoses of Chronic Pain of both shoulders, Rotator Cuff Impingement Syndrome of the Left Shoulder, and Adhesive Capsulitis of the Right Shoulder (B7F/4 - 7). An x-ray examination of her right shoulder revealed findings that could be due to old trauma or evidence of

degenerative change (B8F/5). . . .

Subsequently, on November 9, 2021, the claimant presented for a Psychiatric Evaluation and endorsed experiencing problems with depression and anxiety (B11F/35). She reported that the mental health of her son was a trigger, and she reported an inability to complete her hygiene, due to depression (Id. at 36). During the associated examination, her mood was noted as anxiety, and her memory was noted as poor, but her insight was noted as fair, and her judgment was noted as good (Id. at 38). Next, during a telehealth visit on November 29, 2021, she reported that she had been doing arts and crafts over the weekend (B13F/60). Subsequently, on December 22, 2021, she reported that she had recently been hired for part-time job that she was starting during the following week (B13F/58). . . .

During primary care visits in late 2021 and January 2022, the claimant's diagnoses included Migraines, which she reported were occurring 2 - 3 times per week (B14F/66, 70, 82 - 83). The associated physical examinations revealed grossly normal findings (Id. at 72, 85). Further, the record notes she continued to be treated conservatively with prescribed medications (Id. at 73, 86 - 87). . . .

During early 2022, the record documents the claimant's continued psychiatric treatment for Major Depressive Disorder and GAD, which were treated conservatively with prescribed medication (B11F & B13F). On February 28, 2022, she was noted to be feeling less depressed, and less anxious, after taking Zoloft in the morning; however, she requested a different medication for anxiety, as Zoloft made her tired (B13F/40 - 41). Next, in April 2022, she presented for follow-up medication management and requested a medication change (B13F/29). She reported that she put her son out and that he was doing better, but still having anger outbursts (Id.). While she endorsed anhedonia, she was noted to be able to complete her activities of daily living (Id.). Further, she reported having some occasional panic attacks, occurring about once a week (Id. at 30). Upon examination, her mood was noted as depressed, her affect was noted as appropriate, and her memory, insight, judgment, and concentration were all noted to be fair (Id. at 31).

Thereafter, in May 2022, the claimant reported that she was doing "pretty good" (Id. at 48). Additionally, she reported that she was working part-time, she reported that she was going to school part-time, and she reported that she got in "A" in her course (Id.). Notably, the record documents the claimant was involuntarily discharged from Chrysalis Health Ohio on October 17, 2022, where she had been treated for Major Depressive Disorder (MDD) and GAD since November 2021, due to nonparticipation (B13F/100). . . .

On October 3, 2022, the record documents the claimant sought treatment with complaints of experiencing 4 months of ulnar-sided wrist paresthesias, and the pain which was noted to fluctuate in intensity throughout the day (B15F/9). She

was diagnosed with Right Wrist Pain and Ulnar Neuropathy at the Right Wrist (Id.). Further, the record notes that she was started on a Prednisone taper, and she was directed to use a wrist splint daily and nightly (Id.). . . .

Thereafter, on November 4, 2022, the claimant sought treatment and reported that her depression had worsened, as she had been without her medications for 4 months (B13F/17). However, a review of a Psychiatric Progress Note dated November 18, 2022 reveals she reported: "I am doing good for now" (Id. at 13). Thereafter, in December 2022, she endorsed having frequent suicidal thoughts (Id. at 21). Upon examination, her mood was noted to be anxious, and her affect was noted as being congruent (Id. at 22).

(ECF No. 7, PageID #: 45-48).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since April 18, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: Degenerative Joint Disease of the Bilateral Shoulders; Mild Degenerative Disc Disease of the Lumbar Spine; Migraines, Chronic Obstructive Pulmonary Disease; Ulnar Neuropathy of the Right Upper Extremity; Hypertension; Major Depressive Disorder; and Generalized Anxiety Disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she could occasionally push and/or pull with the bilateral upper extremities; she could frequently climb and stairs; she could frequently balance, stoop, kneel, crouch, and crawl; she should avoid overhead reaching with the bilateral upper extremities, but she could frequently handle and finger with the bilateral upper extremities; she should avoid concentrated exposure to noise, fumes, odors, dusts, gases, and poor ventilation; she should avoid hazards, including moving machinery, heavy machinery, and unprotected heights; she should avoid concentrated exposure to bright light, such as in a warehouse, assembly line, or construction spotlights; she could occasionally interact with coworkers, supervisors and public; she should avoid

positions that require managerial skills, persuasion skills, mediation skills, or conflict resolution skills; she could perform jobs with occasional changes that are well explained; and she would be off task for 5% of the workday.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 18, 2020, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 39-40, 44, 50-52).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial

evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal, asserting that the ALJ erred in considering the medical opinions. (ECF No. 8 at 6). Despite using the plural "opinions," Claimant only presents specific argument concerning the opinion of Anyi Asongacha. (*See id.* at 6-14). Thus, only the ALJ's treatment of Asongacha's opinion is at issue and Claimant has waived argument as to any

7

other opinions. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

Here, the ALJ explained how she considered Asongacha's opinion:

> [T]he undersigned considered the opinion of Anyi Asongacha, CNP, a treating source, who completed a Mental Impairment Questionnaire on May 13, 2023 and

8

> diagnosed the claimant with MDD and GAD (B16F). Nurse Practitioner Asongacha opined the claimant would be off task for 10% of an average typical work week, her impairments and treatment would cause her to be absent from work twice a month, and claimant's impairments cause moderate functional limitations (Id. at 1 - 4). Accordingly, regarding the opined functional limitations, the undersigned finds the nurse practitioner's opinion to be overall persuasive, as said opinion is generally consistent with and supported by the totality of the record, which supports a finding that the claimant benefits from conservative care of her mental health symptoms. However, regarding the off task and absenteeism limitations, the undersigned finds the nurse practitioner's opinion to be non-persuasive, as said opinion is neither consistent with nor supported by the totality of the record, which documents a history of conservative care for the claimant's severe mental impairments. In this regard, the undersigned notes that the record fails to document recurring emergency care or inpatient hospitalizations for mental impairments.

(ECF No. 7, PageID #: 49).

Claimant argues that the ALJ "failed to properly evaluate the medical source opinions for supportability, instead conflating the supportability factor with the consistency factor by finding the opinions 'consistent [or not consistent] with and supported [or not supported] by the totality of the record.'" (ECF No. 8 at 8). Claimant asserts that "[f]or the ALJ to have adequately discussed the <u>supportability</u> of the opinions of the medical sources, the ALJ needed to evaluate what these sources said they each based their opinions on—not simply how the opinions compared to the record evidence as a whole, which only goes to the consistency of the medical source opinions." (*Id.* at 9). Claimant argues that the "ALJ also failed to build a logical bridge in explaining how the ALJ found CNP Asongacha's opinion to be 'overall persuasive' *except* for the limitations that the vocational expert testified would be work preclusive, *i.e.* the off-task and absence limitations" and instead "arbitrarily decided that Rambo would be off-task only five percent of the workday without explaining this arbitrary number other than vaguely mentioning alleged 'conservative care.'" (*Id.* at 12-13).

9

The Commissioner responds that the "ALJ reasonably concluded that Nurse Asongacha's Mental Impairment Questionnaire was overall persuasive but her off task and absenteeism limitations were neither consistent with nor supported by the totality of the record, which documented a history of conservative care, no recurring emergency care or inpatient hospitalizations for mental impairments." (ECF No. 10 at 6). The Commissioner asserts that the ALJ's discussion of the medical evidence shows that she "not only considered (and explicitly discussed) the evidence that Nurse Asongacha relied on when forming her opinion but explained why it did not support her finding that Plaintiff would be off task ten percent of the week and absent from work twice a month." (*Id.* at 9-10). Additionally, the Commissioner argues that "Nurse Asongacha did not provide any support for her findings, except noting Plaintiff's diagnoses—of major depressive disorder and generalized anxiety disorder—and checking boxes indicating her signs and symptoms" such that "the ALJ could have rejected the opinion because 'an ALJ may properly give little weight to a medical source's check-box form of functional limitations when it does not cite clinical test results, observations, or other objective findings.'" (*Id.* at 8 (quoting *Kreilach v. Comm'r of Soc. Sec.*, No. 1:20-CV-00875, 2022 WL 3347334, at *8 (N.D. Ohio Aug. 15, 2022))). Thus, the Commissioner argues that any failure "to provide good reasons for rejecting the opinion contained in a patently deficient checkbox form is harmless error." (*Id.* at 12 (quoting *Hunt v. Comm'r of Soc. Sec.*, No. 1:21-CV-00075-DAR, 2022 WL 4599246, at *3 (N.D. Ohio Sept. 29, 2022))).

Claimant replies that the ALJ did not rely on the check box format of the opinion in her decision and this Court is not free to accept the post hoc rationalization of counsel. (ECF No. 11 at 1-2). Claimant argues that the medical records the Commissioner cites as showing that the ALJ addressed supportability actually go to consistency and "[l]ike the ALJ, Commissioner is

10

conflating these two factors." (*Id.* at 3). Additionally, Claimant argues that the evidence does not support the Commissioner's argument because "it is far from clear how a depressed mood, a labile and tearful affect, and 'fair' insight and judgment supports the ALJ's rejection of Nurse Asongacha's off-task and absenteeism opinions." (*Id.*).

Claimant's challenge to the ALJ's treatment of Asongacha's opinion fails. As Claimant argues, "'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021). However, as has also been observed, "[w]hether a medical source's opinion is supported by the record may necessarily overlap with whether a medical source's opinion is consistent with the record, as the opinion's support will typically come from other evidence in the record." *Guthrie v. Comm'r of Soc. Sec.*, No. 3:22 CV 1309, 2023 WL 6258259, at *3 (N.D. Ohio Sept. 26, 2023). Thus, the ALJ's statement that Asongacha's absenteeism and off task limitations were "neither consistent with nor supported by the totality of the record" can be read to address both factors, especially given that Asongacha's treatment records were included in the record. (ECF No. 7, PageID #: 49; *see id.* at PageID #: 686-98, 707-22, 748-52).

Further, even if the ALJ did fail to adequately articulate her consideration of the supportability factor, the Court concludes that any error was harmless. The Sixth Circuit has recognized that an ALJ's failure to comply with a procedural rule when considering an opinion is harmless error when an "opinion is so patently deficient that the Commissioner could not possibly credit it." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 554 (6th Cir. 2020) (addressing an ALJ's failure to provide "good reasons" for the weight given an opinion). While "[t]he Sixth Circuit has yet to articulate a harmless error test under the revised § 404.1520c"

11

applicable here, "other district courts have applied the analysis previously used." *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at *13 (N.D. Ohio Apr. 27, 2022) (collecting cases), *report & recommendation adopted*, 2022 WL 1568478 (N.D. Ohio May 17, 2022); *see Riggio v. Comm'r of Soc. Sec.*, No. 3:22 CV 997, 2023 WL 6225093, at *4 (N.D. Ohio Sept. 26, 2024) ("[C]ourts have applied a harmless error analysis to the articulation requirement regarding [supportability and consistency]."). The Sixth Circuit has "characterized an opinion expressed in a check-box form, without any further explanation to support the treating physician's conclusions, as 'weak evidence' and ha[s] concluded that such an opinion meets the patently deficient standard." *Pruitt v. Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022) (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016)). Here, Asongacha's opinion is set forth in a checkbox format and contains nothing more than Claimant's diagnoses to support the opined limitations. (*See* ECF No. 7, PageID #: 927-30). Thus, the opinion is patently deficient such that any error by the ALJ in considering it was harmless. Despite Claimant's argument that the checkbox format is the post hoc rationalization of counsel, the Sixth Circuit has affirmed the rejection of such opinions even when the ALJ does not "expressly cite the unsupported checkbox format as a basis" for rejecting an opinion. *Gallagher v. Berryhill*, No. 5:16-CV-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017) (citing *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 564, 566-68 (6th Cir. 2016)), *report & recommendation adopted sub nom.*, 2017 WL 2779192 (N.D. Ohio June 27, 2017).

Finally, the ALJ also built an accurate and logical bridge to support her rejection of Asongacha's off task and absenteeism limitations. The ALJ specifically explained that she found these limitations unpersuasive because the record "documents a history of conservative care for the claimant's severe mental impairments" and "fails to document recurring emergency care or

12

inpatient hospitalizations for mental impairments." (ECF No. 7, PageID #: 49). Earlier in the decision, the ALJ noted that despite Claimant's testimony that "she is forgetful, she experiences episodes of confusion, and she feels zoned out," she "did not require the questions that were posed to her during the hearing to be restated or rephrased." (*Id.* at PageID #: 43). In discussing the medical records, the ALJ cited instances where Claimant's "concentration was noted as good, and her insight, judgment, and impulse control were noted as good" as well as instances where "her concentration and memory were noted to be poor, her insight was noted as fair," and her judgment remained "good." (*Id.* at PageID #: 46-47). The ALJ noted Claimant's reports that despite her symptoms, she was able to complete arts and crafts, work and attend school part time, and complete her daily activities, except for reporting on one occasion that she was struggling with hygiene due to her depression. (*Id.*). Thus, it is clear that after considering the evidence, the ALJ found that the off task and absenteeism recommendations were not supported by the record. While Claimant may weigh the evidence differently, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: July 9, 2024

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).